**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST SAINT LOUIS DIVISION**

| | |
|---|---|
| JOHN DRISCOLL, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) Case No. 15-CV-1089-DRH-SCH |
| v. | ) ) |
| TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC, d/b/a Trump Hotel Collection, a Delaware limited liability company, and JOHN DOES 1-20, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANT TRUMP INTERNATIONAL HOTELS MANAGEMENT LLC'S RULE 12(b)(3) AND (b)(6) MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................... 2

III.   Venue Does Not Exist in the Southern District of Illinois, or, Alternatively, This Case Should Be Transferred to the Southern District of New York .................................. 3

      A.    This Case Was Filed in an Improper Venue and Should Be Dismissed. ................ 3

      B.    Alternatively, This Case Should Be Transferred to the Southern District of New York. .................................................................. 7

IV.   The Complaint Fails to State a Claim for Relief ................................................. 9

      A.    Case Law in Similar Data Breach Cases Demonstrates that Plaintiff Has Not Sufficiently Alleged Injury or Damages to State Claims ............................ 10

      B.    Plaintiff's Individual Causes of Action Must Be Dismissed for Additional Reasons. .................................................... 14

            1.    Plaintiff has not stated a claim for negligence or negligence per se. ......... 15

            2.    Plaintiff has not stated a claim for breach of implied contract. ................ 16

            3.    Plaintiff has not stated a claim for unjust enrichment. .............................. 19

V.    CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbasi ex rel. Abbasi v. Paraskevoulakos,*
   718 N.E.2d 181 (Ill. 1999) ........................................................................15

*Anderson Elec., Inc. v. Ledbetter Erection Corp.,*
   503 N.E.2d 246 (Ill. 1986) ........................................................................15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................18

*Ass'n Benefit Servs. v. Caremark Rx, Inc.,*
   493 F.3d 841 (7th Cir. 2007) ....................................................................19

*Barille v. Sears Roebuck & Co.,*
   682 N.E.2d 118 (Ill. App. Ct. 1997) ........................................................10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .........................................................................9, 10, 11

*Best v. Malec,*
   No. 09-C-7749, 2010 WL 2364412 (N.D. Ill. June 11, 2010) ................11

*Brody v. Finch Univ. of Health Scis./The Chi. Med. Sch.,*
   698 N.E.2d 257 (Ill. App. Ct. 1998) ........................................................16

*Chaklos v. Stevens,*
   No. 06-4063, 2006 WL 2247309 (S.D. Ill. Aug. 4, 2006) ........................5

*Clark Prods., Inc. v. Rymal,*
   No. 02-cv-6893, 2002 WL 31572569 (N.D. Ill. Nov. 19, 2002) ..............5

*Cleary v. Philip Morris Inc.,*
   656 F.3d 511 (7th Cir. 2011) ....................................................................19

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,*
   417 F.3d 727 (7th Cir. 2005) ......................................................................4

*Cooney v. Chicago Pub. Schs.,*
   943 N.E.2d 23 (Ill. App. Ct. 2010) ....................................................10, 14

*Creighton v. Metro. Life Ins. Co.*,
No. 15-cv-959, 2015 WL 6134407 (S.D. Ill. Oct. 19, 2015) ................................8

*Direct Supply Inc. v. Pedersen*,
No. 10-cv-278, 2011 WL 1131092 (E.D. Wis. Mar. 28, 2011) ..............................18

*First Place Bank v. Skyline Funding, Inc.*,
No. 10-cv-2044, 2011 WL 824612 (N.D. Ill. Mar. 4, 2011) ................................16

*Fodor v. Hartman*,
No. 05-cv-2539, 2006 WL 1488894 (D. Colo. May 30, 2006) ..............................6

*Frye v. L'Oreal USA, Inc.*,
583 F. Supp. 2d 954 (N.D. Ill. 2008) ................................................10, 11

*Grantham v. Challenge-Cook Bros., Inc.*,
420 F.2d 1182 (7th Cir. 1969) ............................................................3

*Graves v. Pikulski*,
115 F. Supp. 2d 931 (S.D. Ill. 2000) .................................................3, 4

*Grigsby v. Valve Corp.*,
No. 12-cv-553, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012) ...........................12

*Hammond v. Bank of N.Y. Mellon Corp.*,
No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................13

*Hanyuan Dong v. Garcia*,
553 F. Supp. 2d 962 (N.D. Ill. 2008) ................................................5, 7

*Hendricks v. DSW Shoe Warehouse Inc.*,
444 F. Supp. 2d 775 (W.D. Mich. 2006) ..................................................12

*Holmes v. Countrywide Fin. Corp.*,
No. 5:08-cv-205, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ...........................12

*In re Ill. Bell Switching Station Litig.*,
641 N.E.2d 440 (Ill. 1994) .............................................................15

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ..............................................13, 16

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*,
No. 3:12-md-2385, 2013 WL 3791509 (S.D. Ill. July 18, 2013)............................3

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009) ...........................................................16

*Jaramillo v. DineEquity, Inc.*,
    664 F. Supp. 2d 908 (N.D. Ill. 2009) ..................................................9

*Johnson v. Masselli*,
    No. 2:07-cv-214, 2008 WL 111057 (N.D. Ind. Jan. 4, 2008)..................5

*Kahle v. Litton Loan Servicing LP*,
    486 F. Supp. 2d 705 (S.D. Ohio 2007) ...............................................13

*Kipp v. Ski Enter. Corp. of Wis., Inc.*,
    783 F.3d 695 (7th Cir. 2015) .............................................................6

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) .............................................................4

*Lirtzman v. Fuqua Indus., Inc.*,
    677 F.2d 548 (7th Cir. 1982) ...........................................................17

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) .....................................................17, 18

*McLoughlin v. People's United Bank*,
    No. 3:08-cv-944, 2009 WL 2843269 (D. Conn. Aug. 31, 2009)...........12

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    435 N.E.2d 443 (Ill. 1982)...............................................................15

*Moyer v. Michaels Stores, Inc.*,
    No. 14-C-561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ...........12, 16

*Nuckols v. Stevens*,
    No. 2:14-cv-705, 2014 WL 5197205 (M.D. Ala. Oct. 14, 2014) ...........5

*Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*,
    840 F.2d 1319 (7th Cir. 1988) .........................................................17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...........................................................15

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) .................................................12, 13, 14

*Ponder v. Pfizer, Inc.*,
    522 F. Supp. 2d 793 (M.D. La. 2007)................................................12

*Remijas v. Neiman Marcus Group, LLC*,
    794 F.3d 688 (7th Cir. 2015) ...........................................................14

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
 626 F.3d 973 (7th Cir. 2010) ................................................................7, 9

*Ruddy v. Wilmot Mountain, Inc.*,
 No. 10-cv-7219, 2011 WL 3584418 (N.D. Ill. Aug. 12, 2011) ............................6, 7

*Ruppert v. Principal Life Ins. Co.*,
 No. 06-cv-903, 2007 WL 2025233 (S.D. Ill. July 9, 2007) .................................9

*Schwarz v. Nat'l Van Lines, Inc.*,
 317 F. Supp. 2d 829 (N.D. Ill. 2004) .......................................................5

*Shafran v. Harley Davidson, Inc.*,
 No. 07-cv-1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008).............................12

*Smith v. Prime Cable of Chi.*,
 658 N.E.2d 1325 (Ill. App. Ct. 1995) ......................................................11

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
 533 F.3d 162 (3d Cir. 2008)................................................................16

*Specht v. Google, Inc.*,
 660 F. Supp. 2d 858 (N.D. Ill. 2009) .......................................................5

*Typpi v. PNC Bank, Nat'l Ass'n*,
 No. 13-cv-3930, 2014 WL 296035 (N.D. Ill. Jan. 27, 2014)...............................15

*Worix v. MedAssets, Inc.*,
 857 F. Supp. 2d 699 (N.D. Ill. 2012) ......................................................12

*Zadrozny v. City Colls. of Chi.*,
 581 N.E.2d 44 (Ill. App. Ct. 1991) ....................................................16, 17

STATUTES

15 U.S.C. § 1643(a)(1)(B) ................................................................10

15 U.S.C. § 1693g(a)(1).................................................................10

28 U.S.C. § 1391(b) ......................................................................4

28 U.S.C. § 1404(a) ....................................................................1, 7

28 U.S.C. § 1391(b)(2) ..................................................................7

815 Ill. Comp. Stat. 505/1 ..............................................................10

815 Ill. Comp. Stat. 505/10a ...........................................................11

815 Ill. Comp. Stat. 510/2 .............................................................................................................11

815 Ill. Comp. Stat. 530/15 ...........................................................................................................11

Pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Trump International Hotels Management LLC ("Trump Hotel") respectfully moves to dismiss this putative class action complaint brought by Plaintiff John Driscoll, and, alternatively, moves to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). In support thereof, Trump Hotel submits this Memorandum of Law.

## I.      INTRODUCTION

Even though Trump Hotel does not conduct or do business in this District and the alleged data breach giving rise to the Complaint did not occur in this District, Plaintiff asks this Court to decide claims on behalf of a putative class of individuals whose card information was allegedly obtained by "data thieves" who accessed Trump Hotel's computer network outside this District. This District bears no relationship to the controversy, other than that one plaintiff in a putative class action ventured from this District to Trump Hotel's hotels outside this District and allegedly had his debit card data stolen. Accordingly, venue is improper, and the Complaint should be dismissed.

Even putting aside that venue is improper, Plaintiff's claims fail on their merits. Plaintiff does not allege that these "data thieves" have used any of the allegedly stolen information to Plaintiff's detriment by, for example, committing identity theft or extortion. Instead, Plaintiff asserts claims and seeks money from Trump Hotel based on nothing more than the speculative possibility that he *could* suffer an injury *if* some unknown party views his information and *if* that unknown party uses the information in a manner that causes harm to Plaintiff's interests and that, therefore, he must spend time monitoring his account information to guard against potential fraud. In similar data breach cases, courts across the country have routinely held that the type of harm alleged by Plaintiff here—namely, time spent monitoring an account to protect against

potential fraud in case an unknown third party might someday misuse the Plaintiff's debit card information—is an insufficient allegation of injury or damages, regardless of the cause of action pleaded.  Because each cause of action asserted by Plaintiff requires proof of compensable injury or damages, Plaintiff's Complaint should be dismissed.

Furthermore, Plaintiff's specific causes of action suffer from numerous defects: (1) the negligence and negligence per se claims are barred by the economic loss rule; (2) Plaintiff has not sufficiently alleged the existence of an implied contract; and (3) the unjust enrichment claim rests on the same conduct at issue in Plaintiff's other claims.

## II.    FACTUAL BACKGROUND

According to the Complaint, Trump Hotel "owned, operated, and/or managed" various hotels, including, inter alia, Trump SoHo New York, Trump International New York, and Trump International Chicago (collectively, the "Properties").  Compl. ¶ 1.  Plaintiff alleges that, from at least May 19, 2014 to June 2, 2015, unauthorized malware had access to card information as it was inputted into payment card systems at the Properties.  *Id.* ¶ 16.  After discovering the breach, Trump Hotel notified the public of the data breach on or about September 29, 2015.  *Id.* ¶ 2.

The only putative class representative, Plaintiff John Driscoll, alleges that he "stayed at multiple of the Properties, including but not limited to Trump SoHo New York and Trump International Chicago."  *Id.* ¶ 12.  He alleges, upon information and belief, that his debit card information was "compromised" by the data breach.  *Id.*  He does not allege that this information has been misused as a result of the data breach, but rather only that he has "spent time determining if his card was compromised" and "spent [time] monitoring his account information to guard against potential fraud."  *Id.*  He does not even allege that he has spent money as a result of the data breach.  *Id.*

On October 2, 2015, Plaintiff filed his Complaint, asserting claims for violation of generic state consumer protection laws, violation of generic state data breach notification statutes, negligence, breach of implied contract; negligence per se, and unjust enrichment. Plaintiff seeks to represent three nationwide putative classes of "[a]ll persons who engaged in payment card transactions at Defendants' Properties whose [card information] was subject to Defendant's security failures and who suffered damages": (1) "in the loss of time and use of their credit and debit cards until such time as replacement cards could be obtained"; (2) "in the amount of fraudulent charges / unauthorized withdrawals . . . or . . . in the amount of overdraft charges"; and (3) "who have suffered or anticipate suffering damages, loss, and/or expenses accruing due to Defendant's security failures." *Id.* ¶ 50. However, Plaintiff does not allege that he (1) obtained a replacement card, (2) suffered any fraudulent charges or unauthorized withdrawals or experienced any overdraft charges, or (3) suffered any compensable damages, loss, or expenses.

## III.   Venue Does Not Exist in the Southern District of Illinois, or, Alternatively, This Case Should Be Transferred to the Southern District of New York

Because the Southern District of Illinois is an improper venue for this litigation, this case should be dismissed. In the alternative, this case should be transferred to the Southern District of New York.

### A.   This Case Was Filed in an Improper Venue and Should Be Dismissed.

"Plaintiff bears the burden of establishing that venue is proper." *Graves v. Pikulski*, 115 F. Supp. 2d 931, 934 (S.D. Ill. 2000) (Foreman, J.); *accord Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab.*

*Litig.*, No. 3:12-md-2385, 2013 WL 3791509, at *2 (S.D. Ill. July 18, 2013) (Herndon, C.J.).[1] Plaintiff has failed to meet his burden here.

A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction.  28 U.S.C. § 1391(b).  None of these situations applies here.

First, as Plaintiff implicitly concedes, Trump Hotel does not reside in this District.  *See* Compl. ¶ 11 (contending that venue is proper only because allegedly "a substantial part of the events or omissions giving rise to Consumer Plaintiffs' claims occurred in this judicial district"). The Seventh Circuit recently affirmed an order from this Court dismissing a case for lack of venue where the defendant had "minimal in-district sales," "had no offices or employees in the district" and "does not send agents into the district for purposes of maintaining the equipment or providing other customer service."  *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732, 734 (7th Cir. 2013).  Trump Hotel has no Properties in this District, no employees in this District, and does not conduct business in this District.  *See* Decl. of Eric Brunnett, at ¶¶ 7, 10, 11.  Trump Hotel's "activities in the Southern District of Illinois fall so far short . . . that they must be characterized as *de minimis* for purposes of the transacting-business inquiry."  *See KM Enters.*, 725 F.3d at 731.  Thus, Trump Hotel does not reside in the District.

---

[1] To determine whether venue is proper, a court may examine facts outside the complaint." *Graves*, 115 F. Supp. 2d at 934; *accord Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

Second, Plaintiff's allegation that a "substantial" portion of the events giving rise to this putative class action occurred in this District is belied by the remainder of the Complaint and the facts. Although a "majority" of the events giving rise to the claim need not occur within the district, the events at least need to be "substantial." *Chaklos v. Stevens*, No. 06-4063, 2006 WL 2247309, at *1 (S.D. Ill. Aug. 4, 2006) (Gilbert, J.). "To be substantial, 'the events that occurred in the forum district must be a part of the historical predicate of the claim.'" *Id.* (quoting *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (St. Eve, J.)). This inquiry involves "[d]etermining where a claim arose," *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (Leinenweber, J.), and it "centers on where the Defendants' acts took place," *Johnson v. Masselli*, No. 2:07-cv-214, 2008 WL 111057, at *4 (N.D. Ind. Jan. 4, 2008) (Simon, J.).

Notably, the venue inquiry does not turn on where the plaintiff suffers damages. *See Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962 (N.D. Ill. 2008) (Bucklo, J.). In *Hanyuan Dong*, the plaintiff alleged that he "presently suffers from his injuries in Illinois, where he seeks treatment and 'will continue to become obligated for[] large sums of money for medical and hospital care and attention.'" *Id.* at 965 (alteration in original). The court held that "[t]he fact that he alleges to have suffered from his injuries after returning to Illinois does not constitute 'a substantial part of the events or omissions giving rise to the claim'"; the focus is on where the "'tortious acts underlying [plaintiff's] injury'" occurred, not where the plaintiff suffers damages. *Id.* (quoting *Clark Prods., Inc. v. Rymal*, No. 02-cv-6893, 2002 WL 31572569, at *4 (N.D. Ill. Nov. 19, 2002) (Conlon, J.)); *see also Nuckols v. Stevens*, No. 2:14-cv-705, 2014 WL 5197205, at *2 (M.D. Ala. Oct. 14, 2014) (Watkins, C.J.) ("The medical treatment Plaintiff has received and continues to receive 'are the damages suffered and do not constitute a substantial part of the

events giving rise to the claim.'" (quoting *Whiting v. Hogan*, 855 F. Supp. 2d 1266, 1286

(D.N.M. 2012) (Browning, J.))); *Fodor v. Hartman*, No. 05-cv-2539, 2006 WL 1488894, at *4

(D. Colo. May 30, 2006) (Figa, J.) ("[W]hile plaintiff asserts in his affidavit that the damage to

his reputation occurred in Colorado, where he resides, the Court notes that the locus of damage

to a plaintiff has not been found to be the basis for setting venue." (citation omitted)).

Likewise, this inquiry does not turn on whether the defendant solicited business in the

District.  Solicitation is not enough to confer jurisdiction, let alone venue.  *See Ruddy v. Wilmot*

*Mountain, Inc.*, No. 10-cv-7219, 2011 WL 3584418, at *3 (N.D. Ill. Aug. 12, 2011) (Coleman,

J.) ("Illinois courts consistently reject mere solicitation of business as a basis for the exercise of

general personal jurisdiction."); *see also Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698

(7th Cir. 2015) ("[Defendant] does solicit business in Illinois, but no case has ever held that

solicitation alone is sufficient for general jurisdiction.").  Accordingly, the *Ruddy* court found

that the defendant's solicitation of business in the district was insufficient to support either

jurisdiction or venue.  2011 WL 3584418, at *3-4.

Here, the acts underlying Plaintiff's claims all occurred outside this District.  Plaintiff

allegedly stayed at Trump Hotel's Properties outside this District.  Compl. ¶ 12.  Plaintiff

allegedly used his debit card at Trump Hotel's Properties outside this District.  *Id.*  Data thieves

allegedly obtained card information outside this District as a result of these purchases.  *See id.* at

¶¶ 2, 12.  Trump Hotel does not store or maintain any electronic data within the Southern District

of Illinois.  Decl. of Eric Brunnett, at ¶ 8.  The Complaint's only allegations remotely connected

to the Southern District of Illinois are that Plaintiff suffers damages in this District and was

"solicited and encouraged within this district to transact business with Defendanats [*sic*]."

Compl. ¶ 11.  But, as described above, the location where a plaintiff allegedly suffers damages

does not confer venue.  *See Hanyuan Dong*, 553 F. Supp. 2d at 965.  Nor can allegations of solicitation support venue in this District.  *See Ruddy*, 2011 WL 3584418, at *3-4.  Thus, Plaintiff cannot meet his burden of proving that venue is proper under § 1391(b)(2).

Third, there are districts in which this action may otherwise be brought.  Trump Hotel admits that venue would be proper, for example, in the Southern District of New York because Trump Hotel resides in that district.  Accordingly, this Court should grant Trump Hotel's motion to dismiss for improper venue.

**B.      Alternatively, This Case Should Be Transferred to the Southern District of New York.**

Alternatively, if venue is determined to be proper, this case should be transferred to the Southern District of New York.  Pursuant to 28 U.S.C. § 1404(a), this Court may transfer venue to another district when doing so would be in the interest of justice and convenient for the parties.

Transferring this action to the Southern District of New York is in the interest of justice. "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  In assessing the interest of justice, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citations omitted).

These factors support transferring this case to the Southern District of New York.  First, the Southern District of New York has a greater relationship to the controversy.  Here, Trump Hotel's headquarters and principal place of business are in the Southern District of New York, as

are its records, policy makers, and decision makers.  Decl. of Eric Brunnett, at ¶¶ 3-4.  Two of Trump Hotel's hotels alleged to have been implicated in the data breach—Trump SoHo New York and Trump International New York—are in that district, Compl. ¶¶ 1, 12, and Plaintiff stayed at both of these hotels a total of thirteen times, Decl. of Eric Brunnett, at ¶ 9.  To the extent that Trump Hotel retains any documents or other material relevant to the claims alleged in this case, those records are maintained at Trump Hotel's headquarters in the Southern District of New York.  Decl. of Eric Brunnett, at ¶ 5.  Thus, the Southern District of New York has a greater relationship to the controversy and transfer would serve the interests of justice.  *See Creighton v. Metro. Life Ins. Co.*, No. 15-cv-959, 2015 WL 6134407, at *4 (S.D. Ill. Oct. 19, 2015) (Herndon, J.) (transferring a putative nationwide class brought by a local plaintiff to the Southern District of New York in part because the defendant "is headquartered in the Southern District of New York where all the records, the policy makers and decision makers are located").

The other interest of justice factors point to the same outcome.  In October, this Court transferred a case to the Southern District of New York in part because of the docket congestion and speed to trial factors:

> The Federal Court Management Statistics show that – for civil cases in the 12-month period ending March 2015 – the median time frame from filing to disposition was 39 months in the Southern District of Illinois and 8.9 months in the Southern District of New York.  Specifically as to cases resolved via trial, the median time was 38 months in the Southern District of Illinois and 32.1 in the Southern District of New York.  The same statistics for the 12-month period ending in June 2015 bear out the same conclusion that a speedier resolution will result from transfer.  The median time frame from filing to disposition in the Southern District of Illinois was 35 months and 8.9 months in the Southern District of New York.

*Id.* at *3.  Further, it cannot be contended that judges in the Southern District of New York are any less familiar with the causes of action alleged in this Complaint, which are state law causes

of action under the laws of all fifty states, as are the judges of the Southern District of Illinois. Thus, the interest of justice supports transferring this case to the Southern District of New York.

Transferring to the Southern District of New York is also convenient for the parties. "With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum," along with other factors such as "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978.  Here, as was explained above, events material to this controversy occurred in the Southern District of New York, and the only factor arguably supporting venue in this District is that Plaintiff resides herein.  However, while a plaintiff's choice of forum is usually given substantial weight, "this weight is greatly discounted in class actions" because, "if class certification occurs, the named Plaintiffs choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (Denlow, Mag. J.); *see also Ruppert v. Principal Life Ins. Co.*, No. 06-cv-903, 2007 WL 2025233, at *5 (S.D. Ill. July 9, 2007) (Herndon, J.) ("[T]he Court typically accords less deference to a plaintiff's choice of forum when, as here, an action is brought as a class action."). Accordingly, both the interest of justice and the convenience of the parties support transferring this action to the Southern District of New York.

## IV.    The Complaint Fails to State a Claim for Relief.

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the

speculative level"; "labels and conclusions" and "a formulaic recitation of elements of a cause of action will not do." *Id.* at 555.  Here, Plaintiff has failed to state a claim for relief.

### A.   Case Law in Similar Data Breach Cases Demonstrates that Plaintiff Has Not Sufficiently Alleged Injury or Damages to State Claims.

Plaintiff's failure to allege that he suffered compensable injury as a result of the alleged exposure of his debit card information dooms his claims as a matter of law.  Courts across the country have held that an allegation of a data compromise, without any allegation that the lost or stolen data has been misused in a way that harms the plaintiff, does not sufficiently allege injury or damages, and thus fails to state a cause of action in tort or contract.[2]  This Court should reach the same conclusion here and dismiss the Complaint in its entirety based on Plaintiff's failure to allege that he has suffered the requisite injury or damages.

Compensable injury or damages is a required element for each of Plaintiff's causes of action.  *See, e.g.*, *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957, 959 (N.D. Ill. 2008) (Gettleman, J.) (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* ("CFA"), negligence per se, and unjust enrichment); *Cooney v. Chicago Pub. Schs.*, 943 N.E.2d 23, 27, 31 (Ill. App. Ct. 2010) (the CFA, negligence and negligence per se); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1997) (breach of implied contract).  To the extent that Plaintiff attempts to plead a claim under the Illinois Uniform

---

[2] Even if Plaintiff had suffered fraudulent charges, which he does not allege, major card brands have instituted zero-liability protection, which generally ensures that payment card consumers are not held liable for *any amount* of a fraudulent charge.  *See, e.g.,* MasterCard, *Zero Liability Protection*, https://www.mastercard.us/en-us/about-mastercard/what-we-do/terms-of-use/zero-liability-terms-conditions.html; Visa, *Security + Support*, https://usa.visa.com/support/consumer/security.html/; American Express, *Types of Fraud*, https://www.americanexpress.com/us/content/fraud-protection-center/types-of-fraud.html; Discover, *Compare Credit Cards*, https://www.discover.com/credit-cards/compare/index.html?ICMPGN=TOPNAV_CREDITCARD_COMPARE_TAB.  The federal government has also limited consumer liability for fraudulent charges to $50.  *See, e.g.*, 15 U.S.C. § 1643(a)(1)(B) (credit cards); *id.* § 1693g(a)(1) (debit cards).

-10-

Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a) *et seq.* ("UDTPA"), the UDTPA

"allows for injunctive relief, not an award of damages."  *Smith v. Prime Cable of Chi.*, 658

N.E.2d 1325, 1337 (Ill. App. Ct. 1995).  Although the UDTPA also provides that a violation of

that statute constitutes a violation of the CFA, the CFA requires actual damages in order for a

cause of action to be actionable, *see Frye*, 583 F. Supp. 2d at 957; *see also* 815 Ill. Comp. Stat.

505/10a ("Any person who suffers ***actual damage*** as a result of a violation of this Act committed

by any other person may bring an action against such person." (emphasis added)).  Similarly, the

Illinois Personal Information Protection Act ("PIPA"), which is the data breach notification

statute mentioned in Plaintiff's second cause of action, "does not provide for a private cause of

action to seek damages for violations," but rather "provide[s] that 'a violation of this Act

constitutes an unlawful practice under the [CFA].'"  *Best v. Malec*, No. 09-C-7749, 2010 WL

2364412, at *7 (N.D. Ill. June 11, 2010) (Kennelly, J.) (quoting 815 Ill. Comp. Stat. 530/15).

Like the UDTPA and the CFA, the PIPA thus requires "actual damages."  *See* 815 Ill. Comp.

Stat. 505/10a; *see also Best*, 2010 WL 2364412, at *7.

        Here, Plaintiff's allegations generally consist of mere conclusory statements that he

suffered "harms, losses, and damages accruing from the Data Breach," Compl. ¶ 11, "suffered

damages," *id.* ¶ 12, or suffered unspecified "other actual injury and harm," *id.* ¶ 49.  It is well-

settled, however, that such "labels and conclusions" need not be accepted as true on a motion to

dismiss.  *Twombly*, 550 U.S. at 555.  Where Plaintiff actually specifies the injury he asserts, it is

abundantly clear that his claims are based solely on his preventative efforts to avoid speculative

injury that is entirely dependent on hypothetical future criminal acts by unknown third parties.

*See* Compl. ¶ 12 ("Plaintiff Driscoll suffered damages in an amount yet to be determined, as such

damages are ongoing and include, but are not limited to, time spent monitoring his account

information to guard against potential fraud."). While Plaintiffs have conjured up an array of harmful acts that a criminal *could* perpetrate upon gaining access to Plaintiff's debit card information, *id.* at ¶¶ 38-48, he has not alleged that any of those hypothetical events has actually happened to him.

The Court need not break new ground in concluding that Plaintiff's allegations are insufficient as a matter of law. Indeed, there is a long list of data breach cases, including a case from the Seventh Circuit, dismissing claims at the pleading stage where the only injury alleged was an increased risk of fraud or identity theft and resulting time or cost spent monitoring an account. *See, e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633, 640 (7th Cir. 2007) (dismissing negligence and breach of implied contract claims); *Moyer v. Michaels Stores, Inc.*, No. 14-C-561, 2014 WL 3511500, at *6-7 (N.D. Ill. July 14, 2014) (Bucklo, J.) (dismissing breach of implied contract and CFA claims); *Grigsby v. Valve Corp.*, No. 12-cv-553, 2012 WL 5993755, at *2-3 (W.D. Wash. Nov. 14, 2012) (Robart, J.) (dismissing consumer protection law and negligence claims, inter alia); *Holmes v. Countrywide Fin. Corp.*, No. 5:08-cv-205, 2012 WL 2873892, at *5-14 (W.D. Ky. July 12, 2012) (Russell, J.) (dismissing unjust enrichment, breach of contract, data breach notification law, and consumer protection law claims, inter alia); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703-07 (N.D. Ill. 2012) (Kennelly, J.) (dismissing negligence and CFA claims); *McLoughlin v. People's United Bank*, No. 3:08-cv-944, 2009 WL 2843269, at *7-8 (D. Conn. Aug. 31, 2009) (Bryant, J.) (dismissing consumer protection law and negligence claims); *Shafran v. Harley Davidson, Inc.*, No. 07-cv-1365, 2008 WL 763177, at *1, *2 n.2 (S.D.N.Y. Mar. 20, 2008) (Daniels, J.) (dismissing negligence, unjust enrichment, breach of contract, and prima facie tort claims); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 796-98 (M.D. La. 2007) (Brady, J.) (dismissing data breach notification statute claim); *Hendricks v.*

*DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775, 779-83 (W.D. Mich. 2006) (Miles, J.)

(dismissing breach of contract and consumer protection law claims); *see also Kahle v. Litton*

*Loan Servicing LP*, 486 F. Supp. 2d 705, 711 (S.D. Ohio 2007) (Barrett, J.) (collecting cases that

"clearly reject the theory that a plaintiff is entitled to reimbursement for credit monitoring

services or for time and money spent monitoring her credit").[3]

Most notably, in *Pisciotta*, the Seventh Circuit unanimously affirmed the district court's

dismissal in a similar data breach case.  499 F.3d at 631.  In that case, the plaintiffs brought a

putative class action after "a third-party computer 'hacker' was able to obtain access to the

confidential information of tens of thousands of [the defendant's] site users," as a result of the

defendant's failure to adequately secure their personal information.  *Id.*  The *Pisciotta* court held

that, "[w]ithout more than allegations of increased risk of future identity theft, the plaintiffs have

not suffered a harm that the law is prepared to remedy."  *Id.* at 639.  It noted that the "[p]laintiffs

have not come forward with a single case or statute, from any jurisdiction, authorizing the kind

of action they now ask this federal court, sitting in diversity, to recognize as a valid theory of

recovery."  *Id.* at 639-40.  In contrast, "a series of cases," applying the laws of numerous states,

have "rejected information security claims on their merits" because "plaintiffs have not been

injured in a manner the governing substantive law will recognize."  *Id.* at 639.  Thus, *Pisciotta*

---

[3] The few data breach cases that have managed to survive motions to dismiss have typically been dismissed on summary judgment for failure to allege injury.  *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (Berman, J.) (granting summary judgment and noting that "every court to [analyze similar data breach cases] has ultimately dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure or under Rule 56 following submission of a motion for summary judgment").  Cases with distinguishable facts have survived a motion to dismiss when, *e.g.,* the plaintiffs alleged that "criminals have misused their financial information and caused Plaintiffs to lose money from unauthorized withdrawals and/or related bank fees."  *See, e.g.*, *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 n.6 (N.D. Ill. 2011) (Kocoras, J.).  Here, Plaintiff has not alleged that he has lost any money from unauthorized withdrawals or related bank fees.

rejected the plaintiffs' request for "compensation for past and future credit monitoring services that they have obtained in response to the [data breach]," *id.* at 631, and affirmed the dismissal of plaintiffs' claims for negligence and breach of implied contract. *Id.* at 633, 640.[4]

Illinois law is in accord. In *Cooney*, the plaintiffs "contend[ed] that they alleged actual damages because the [data breach] put them at increased risk of future identity theft" and because some of the plaintiffs felt compelled to purchase "credit monitoring services" to monitor their accounts. 943 N.E.2d at 31. The court affirmed the trial court's dismissal of the action because the CFA requires plaintiffs to allege "actual damages," and neither the increased risk of future identity theft nor the purchase of credit monitoring services constitute actual damages. *Id.* Consequently, Plaintiff has not alleged a compensable injury sufficient to state a cause of action, and this Court should dismiss Plaintiff's Complaint.

### B.   Plaintiff's Individual Causes of Action Must Be Dismissed for Additional Reasons.

As discussed above, all the claims asserted by Plaintiff require a showing of some compensable injury or damage as a result of a defendant's conduct. Plaintiff's failure to allege this essential element of his claims justifies dismissal of the Complaint in its entirety. In addition, Plaintiff's specific causes of action suffer from myriad other flaws—specifically, (1) Plaintiff's negligence and negligence per se claims are barred by the economic loss rule; (2)

---

[4] *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) is consistent with *Pisciotta*, as the court in *Neiman Marcus* did not address the defendant's Rule 12(b)(6) arguments. *Id.* at 697. Whereas *Pisciotta* determined that "compensation for past and future credit monitoring services that [plaintiffs] have obtained in response to the [data breach]" is not compensable injury under state law, 499 F.3d at 631, *Neiman Marcus* addressed only the antecedent question of whether such allegations may be sufficient to give the plaintiff Article III standing, 794 F.3d at 693. Trump Hotel does not contest Plaintiff's standing in this Motion.

Plaintiff has not sufficiently alleged the existence of an implied contract; and (3) Plaintiff's

unjust enrichment claim rests on the same conduct at issue in Plaintiff's other claims.[5]

### 1.    Plaintiff has not stated a claim for negligence or negligence per se.

Plaintiff's negligence and negligence per se[6] claims are barred by Illinois' economic loss

rule.  The Illinois Supreme Court has held that a plaintiff cannot recover solely economic loss

under a tort theory of negligence.  *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449

(Ill. 1982).  In *Moorman*, "economic loss" was described as "damages for inadequate value, costs

of repair and replacement, or consequential loss of profits—without any claim of personal injury

or damage to other property."  *Id.* (internal quotation marks omitted).  The rationale underlying

the economic loss rule is that tort law affords the proper remedy for loss arising from personal

injury or damages to one's property, whereas contract law and the Uniform Commercial Code

provide the appropriate remedy for economic loss stemming from diminished commercial

expectations.  *In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 444 (Ill. 1994).  The

economic loss rule applies to claims that services were performed negligently, regardless of the

plaintiff's inability to recover in contract.  *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503

---

[5] In addition, the Complaint does not allege "deceptive" conduct with the particularity required
by the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.
"Because a claim for deceptive conduct under the [CFA] sounds in fraud, Plaintiff is required to
plead with particularity facts such as who made the fraudulent statements or undertook the
fraudulent actions, when they were made or undertaken, and how they were made or
undertaken." *Typpi v. PNC Bank, Nat'l Ass'n*, No. 13-cv-3930, 2014 WL 296035, at *9 (N.D.
Ill. Jan. 27, 2014) (Bucklo, J.); *accord Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust
v. Walgreen Co.*, 631 F.3d 436, 441, 446-47 (7th Cir. 2011) (applying the Rule 9(b) standard to a
CFA deception claim).  "[A] plaintiff generally cannot satisfy the particularity requirement of
Rule 9(b) with a complaint that is filed on information and belief."  *Pirelli*, 631 F.3d at 442.
Here, the Complaint's allegations about the alleged "deficiencies in Defendants' security
system" are based "[o]n information and belief."  Compl. ¶ 18.  Under Rule 9(b), these
"allegations [are] insufficient" to support such a claim.  *See Pirelli*, 631 F.3d at 447.
[6] "Negligence per se" is not strict liability: "the violation of a statute is not negligence *per se*,
which refers to strict liability, but rather only *prima facie* evidence of negligence." *Abbasi ex
rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999) (citation omitted).

N.E.2d 246, 249 (Ill. 1986).

In *Michaels*, the Northern District of Illinois applied Illinois' economic loss rule to a data breach lawsuit and dismissed plaintiffs' negligence and negligence per se claims.  830 F. Supp. 2d at 530-31.  The court noted that "other courts dealing with data breach cases have also held that the economic loss doctrine bars the plaintiff's tort claim because the plaintiff has not suffered personal injury or property damage."  *Id.* at 531.  Since the plaintiffs in *Michaels* did "not dispute the fact that they seek to recover in tort solely for economic losses," the court held that Illinois' economic loss doctrine likewise required dismissal of the suit.  *Id.* at 530.

Here, because Plaintiff seeks damages only for his time spent determining if his debit card was compromised and monitoring his account, his negligence claims fall squarely within the definition of pure economic loss.  *See First Place Bank v. Skyline Funding, Inc.*, No. 10-cv-2044, 2011 WL 824612, at *3 (N.D. Ill. Mar. 4, 2011) (Gettleman, J.) ("Because plaintiff seeks damages for its alleged monetary loss, these claims fall squarely within the definition of a pure economic loss."); *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009) (affirming dismissal of a negligence claim in a data breach case based on Massachusetts' economic loss rule); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 178 (3d Cir. 2008) (affirming dismissal of a negligence claim in a data breach case based on Pennsylvania's economic loss rule).  Accordingly, Plaintiff's negligence claims fail.

### 2. Plaintiff has not stated a claim for breach of implied contract.

"An implied contract is created by law as a result of the parties' acts."  *Zadrozny v. City Colls. of Chi.*, 581 N.E.2d 44, 47 (Ill. App. Ct. 1991).  "Contracts implied in fact arise from a promissory expression that is inferred from circumstantial evidence of an intent to be bound."  *Id.*  "A contract implied in fact contains all of the elements of an express contract, as well as a meeting of the minds."  *Brody v. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 698 N.E.2d

257, 265 (Ill. App. Ct. 1998). Thus, "'an implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt.'" *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 840 F.2d 1319, 1330 (7th Cir. 1988) (quoting *Lirtzman v. Fuqua Indus., Inc.*, 677 F.2d 548, 551 (7th Cir. 1982)).

To survive a motion to dismiss, the plaintiff must "allege sufficient facts to support the existence of a promissory expression." *Zadrozny*, 581 N.E.2d at 47. In *Zadrozny*, the plaintiff brought a breach of implied contract claim against his employer. *Id.* at 45. The plaintiff alleged that "the terms of his employment included the mutual understanding of the traditions, customs and experiences in the field of education," which dictated that the plaintiff's employer had a duty to compensate him for responding to emergency situations. *Id.* at 47. The Appellate Court held that the plaintiff had, nonetheless, "failed to allege sufficient facts to support the existence of a promissory expression that the appellees agreed to provide compensation to him" in such situations. *Id.* at 48. Beyond the plaintiff's barebones assertions, there was nothing to indicate that the employer agreed to compensate him accordingly. *Id.*

Here, Plaintiff alleges that "[e]ach purchase that involved use of a credit or debit card was made pursuant to mutually agreed upon implied contract terms that Defendants would take reasonable measures to protect the [credit or debit card information] . . . and that Defendant would timely and accurately notify Consumer Plaintiffs and the other Class members if and when such information was compromised." Compl. ¶ 101. This barebones assertion is insufficient. Like in *Zadrozny*, Plaintiff has "failed to allege sufficient facts to support the existence of a promissory expression." *See* 581 N.E.2d at 48; *see also McCauley v. City of*

*Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) ("To avoid dismissal, [Plaintiff's] complaint must contain allegations that 'state a claim to relief that is plausible on its face.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

The fact that Plaintiff provided Trump Hotel with his debit card information (and Trump Hotel accepted the card for payment) cannot plausibly be interpreted as an intent to create any contract, let alone a contract (i) governing how Trump Hotel would safeguard Plaintiffs' financial information and/or (ii) imposing requirements regarding the timeliness of notification in the event of a data breach, especially when Plaintiff has not even alleged that he relied on any representations by Trump Hotel before he provided Trump Hotel with his debit card.  Plaintiff alleges only that, "[h]ad such implied contractual terms failed to exist, Consumer Plaintiffs and the other Class members never would have used their credit and debit cards to make purchases at Defendants' Properties and never would have entrusted their [payment card information] to Defendants for use."  Compl. ¶ 102.   Such a claim is simply not "plausible on its face."  *See McCauley*, 671 F.3d at 615.

The only "plausible" inference from the parties' conduct is that Plaintiff provided Trump Hotel with his debit card to facilitate his purchases at Trump Hotel's Properties.  Plaintiff's attempt to plead that every single putative class member who used a payment card at Trump Hotel's Properties did so on the implied agreement that Trump Hotel would safeguard their financial information and timely notify them in the event of a breach "stretches the *Twombly/Iqbal* standard beyond its limits."  *See Direct Supply Inc. v. Pedersen*, No. 10-cv-278, 2011 WL 1131092, at *2 (E.D. Wis. Mar. 28, 2011) (Clevert, C.J.).   Thus, Plaintiff's breach of implied contract claim fails.

### 3.      Plaintiff has not stated a claim for unjust enrichment.

Plaintiff's unjust enrichment claim rests on the same conduct alleged in Plaintiff's other claims, and, accordingly, it must also be dismissed.  *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." (emphasis omitted)).

Here, there can be no doubt that Plaintiff's unjust enrichment claim rests on the same conduct alleged in Plaintiff's other claims.  Plaintiff's claim for unjust enrichment begins by "incorporat[ing] by reference and reassert[ing] all previous paragraphs," including those in his previous claims.  Compl. ¶ 113.  Then, Plaintiff states that the basis for his unjust enrichment claim is the same as his other claims—namely, "Defendants knew or should have known about the Data Breach and but for their inadequate security practices, would have known about the Data Breach on its original date of occurrence."  *Id.* ¶ 116.  Thus, this case calls for a straightforward application of *Cleary* and *Association Benefit Services*.  Given that Plaintiff's other claims fail, so too does his unjust enrichment claim.

## V.      CONCLUSION

For the reasons set forth above, Defendant Trump Hotel respectfully requests that this Court dismiss the Complaint.

Dated: December 14, 2015

Respectfully submitted,

**BRYAN CAVE**

Hal Goldsmith
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
Email:  hal.goldsmith@bryancave.com

**HUNTON & WILLIAMS LLP**

Neil K. Gilman (*pro hac vice*)
2200 Pennsylvania Avenue, N.W.
Washington, DC  20037
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
Email:  ngilman@hunton.com

- and –

John J. Delionado (*pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, FL  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  jdelionado@hunton.com

By:  /s/ John J. Delionado
　　John J. Delionado (Admitted Pro Hac Vice)
　　*Counsel for Defendant Trump International Hotels*
　　　　*Management LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 14, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy to be served electronically on Plaintiffs' counsel listed below:

HIPSKIND & MCANINCH, LLC
John T. Hipskind
Brady M. McAninch
5111 West Main Street
Belleville, Illinois 62226
Phone:  (618) 641-9189
Fax:  (618) 551-2642


   /s/ John J. Delionado
For Hunton & Williams LLP